UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
AMIRA KHAN,                                                                                Civil Action No.:

                              Plaintiff,

               -against-                                                                      **COMPLAINT**

NEW YORK ONLINE REALTY CORP. and
MARK ARENELLA,                                                                         **JURY TRIAL REQUESTED**

                              Defendants.
---------------------------------------------------------------------------X

Plaintiff, Amira Khan ("Plaintiff"), by her attorneys, Law Offices of Yale Pollack, P.C., as and for her Complaint against Defendants, New York Online Realty Corp. and Mark Arenella (collectively "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action against Defendants for gender discrimination, hostile work environment and retaliation based on her termination of employment, in violation of the Title VII of the Civil Rights Act of 1964, ("Title VII") and New York State Human Rights Law (the "NYSHRL"), for which she seeks compensatory damages, interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief.

**ADMINISTRATIVE PROCEDURES**

2. On or about July 1, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for violations of Title VII.

3. On November 22, 2024, the EEOC issued a Notice of Right to Sue so that the Title VII claims can be asserted in this action.

**JURISDICTION AND VENUE**

4. Jurisdiction of this Court over Plaintiff's Title VII claims is invoked pursuant to 28

U.S.C. §1331.

5. Jurisdiction of this Court over Plaintiff's NYSHRL claims is invoked pursuant to 28 U.S.C. §1367(a) as the NYSHRL claims are so related to Plaintiff's Title VII claims as to form the same case or controversy under Article III of the United States Constitution.

6. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District and the residence of Defendants are within the Eastern District.

## PARTIES

7. Plaintiff is an individual who resides in the County of Suffolk, State of New York.

8. Upon information and belief, New York Online Realty Corp. ("NYOR") is a domestic corporation authorized to do business in the State of New York, with its principal place of business located in the County of Suffolk, State of New York.

9. Upon information and belief, Defendant Mark Arenella ("Arenella") is an individual who resides in the State of New York.

10. Arenella participated and/or condoned the discrimination and retaliation of Plaintiff, as more fully set forth herein.

## FACTUAL ALLEGATIONS

11. Plaintiff met Arenella in or about January 2024 about a possible job position at NYOR.

12. Prior to commencing her employment with NYOR, Arenella insisted that Plaintiff engage in a one-week evaluation to be completed between January 8 through January 12, 2024.

13. Plaintiff completed her evaluation without any issue.

14. On January 12, 2024, after the initial evaluation was over, Arenella hosted a staff

dinner, which Plaintiff was encouraged to attend after work hours.

15. Upon arrival at dinner, Plaintiff sat in a random seat that was vacant.

16. To Plaintiff's surprise, a few seconds after sitting down in her chair, Arenella exchanged seats with another employee in order to sit in closer proximity to Plaintiff.

17. Although she did not overthink it at first, Plaintiff began to become intimidated by Arenella's actions.

18. For example, Arenella asked for Plaintiff's Instagram information so that Arenella could follow her.

19. Although Plaintiff did not want to provide her Instagram information, as a new employee at NYOR, she felt that she should abide by Arenella's wishes and ultimately shared it with him.

20. Later that evening, Arenella then invited Plaintiff to a bar with the other female employees of NYOR in order to participate in a contest as to who could drink the most.

21. Plaintiff was very nervous about engaging in such conduct within the first days of her employment with NYOR, and so she respectfully declined the offer and headed home.

22. However, while at home, one of Plaintiff's co-workers, Tiffany, texted her to emphasize how much fun they were having at the bar.

23. The following day, January 13, 2024, Arenella texted Plaintiff to inquire as to why she did not approve his request to follow her on Instagram.

24. Again, not wanting to cause an issue at the commencement of Plaintiff's employment, she reluctantly accepted Arenella's invite so he could follow her Instagram posts.

25. From there, Arenella would scroll through Plaintiff's Instagram profile and make inappropriate remarks about her appearance, which were clearly not proper in an employment

relationship.

26. For example, on January 13, 2024, Arenella texted Plaintiff a picture of her that she posted on Instagram, stating "You have beautiful hair, why don't you wear it like that."

27. That same evening, Arenella told Plaintiff that he had just finished getting a massage and that he was heading to the gym.

28. Confused by why this information was being shared with Plaintiff, she simply went with the flow as she was new to the country and wanted to maintain job security.

29. Arenella then asked what Plaintiff's plans were for the following Sunday.

30. Plaintiff expressed that she would be home cooking, cleaning and resetting for the upcoming week.

31. Instead of letting Plaintiff be, Arenella was relentless in his pursuit of a more intimate relationship with Plaintiff.

32. Arenella told Plaintiff that he was in need of a housekeeper at the time and asked Plaintiff if she would be interested because she said she cooks and cleans.

33. As no overt sexual harassment had taken place prior to this time, Plaintiff agreed to perform additional work for Arenella, seeing it as on opportunity to earn additional income.

34. Arenella then insisted that Plaintiff start on January 24, 2024 for her housekeeping duties.

35. When Plaintiff arrived that day to perform her duties, everything at first seemed normal and work was going smoothly.

36. Plaintiff took down Arenella's Christmas decorations, did the laundry, cleaned and mopped the house, cleaned the toilets, and performed other tasks requested of her by Arenella with respect to cleaning the home.

37. When Plaintiff was finished with her duties for the day, she texted Arenella that there were clothes in the dryer but that she needed to leave to attend work at NYOR the following day.

38. Arenella did not let Plaintiff leave his home.

39. Instead, Arenella told Plaintiff that she should go upstairs to Arenella's bedroom for the money she earned.

40. When Plaintiff arrived in the bedroom, Arenella showed her a massage table in his bedroom and asked her if she would like a massage.

41. Plaintiff respectfully declined, noting that it was already late and she had work the next day.

42. Arenella, again, was relentless, telling Plaintiff that it would be done "quickly" and that all she needed to do was take her clothes off and lay on the massage bed.

43. Plaintiff, fearful for her safety at this point being alone in a room with Arenella, reluctantly complied.

44. Plaintiff also noticed cameras throughout Arenella's bedroom, which made her feel even more uncomfortable about the situation in which he was placing her.

45. When Plaintiff got onto the massage bed, she left on her underwear.

46. It was at this point that Arenella began fondling Plaintiff's breasts and buttocks without her consent.

47. Arenella then directed Plaintiff to take off her underwear.

48. Plaintiff told Arenella that she was on her menstrual cycle so that he would stop and the ordeal could end for her.

49. To say the least, after this encounter, Plaintiff was very skeptical about the position

she accepted at NYOR knowing that Arenella fosters a hostile work environment towards women.

50. Plaintiff, nevertheless, acted professionally in her work at NYOR, trying to keep a positive workflow at the office.

51. However, Arenella would not stop in his pursuit of Plaintiff, texting her after hours to request that she share naked pictures of herself ("Send me some pictures of you now, naked"), which she declined.

52. Arenella proceeded to tell Plaintiff how sexy she was and asked her if she would like to add another guy (Jordan) to engage in threesome with him. Plaintiff, again, declined.

53. Notably, NYOR did not maintain an employee handbook advising employees, such as Plaintiff, of, among other things, their rights to equal employment opportunities in the workplace, let alone who to complain to if the employee felt she was the victim of or witness to such harassment.

54. When Plaintiff complained to Arenella about the improper conduct to which she was subjected and requested that boundaries be set for a professionally working environment, Arenella's response was that she seems "too innocent."

55. After declining Arenella's sexual propositions, the workplace became even more toxic for Plaintiff.

56. Maria (Defendants' officer manager) started giving assignments to Plaintiff that she had not performed before.

57. For example, prior to rejecting Arenella's advances, Plaintiff's responsibility was to call fifty (50) landlords per day.

58. As part of Defendants' marketing strategy, employees of NYOR contacted landlords via phone.

59. Employees were each provided with a spreadsheet containing the landlords' contact information so that they could contact them.

60. NYOR's employees' tasks included emailing fifty (50) landlords, calling fifty (50) landlords, and sending letters to fifty (50) landlords, offering property management services and inquiring about their interest in renting their homes.

61. However, after rejecting Arenella's advances, Plaintiff was told that she needed to call one hundred (100) landlords per day, in addition to her other duties.

62. Nobody else at NYOR was provided such a quota.

63. When Plaintiff complained to Arenella about the increased workload assigned to her, for which she received no additional compensation, Arenella told her that she needed to accept whatever assignments that she was given.

64. Arenella even went so far to call Plaintiff a "bitch" and to get back to work.

65. Upon receiving Arenella's messages, Plaintiff broke down in tears not knowing what her future held for her with Defendants or elsewhere.

66. Arenella made comments to Plaintiff about having a "resting bitch face" and called her "unfriendly."

67. This disrespectful and unsympathetic attitude towards Plaintiff was clearly in retaliation for rejecting Arenella's sexual advances.

68. The impact Arenella's actions had on Plaintiff were extremely detrimental to her emotional wellbeing.

69. On or about March 13, 2024, a co-worker of Plaintiff, Tiffany, sent an email to Defendants advising of her resignation from NYOR.

70. On that same day, Plaintiff was asked by Arenella to fix a computer of NYOR's.

71. Plaintiff first went to Best Buy on her own to see if the computer could be fixed, but Best Buy could not assist her.

72. When she advised Arenella that Best Buy could not fix the computer, he then asked her to go with him to a computer technician he knew to see if he could assist with the computer.

73. Arenella told Plaintiff that he wanted to accompany her on the rides to and from the meeting with the computer technician, as well as to be in the meeting with the technician.

74. During the car ride with Plaintiff, she recanted the conduct to which she was subjected by Arenella.

75. While discussing the issues of Plaintiff's hostile work environment, as well as issues concerning her pay, Arenella also began questioning Plaintiff about Tiffany's sexual life and relationships.

76. Notably, during this car ride, another one of Plaintiff's co-workers, Jennifer, expressed concerns for Plaintiff's safety being alone with Arenella as she was aware of Arenella's sexual interests of Plaintiff.

77. Jennifer also told Plaintiff that Arenella frequently questioned her about whether Plaintiff would go to strip clubs with him, even trying to get Jennifer to persuade Plaintiff to go with him, which she refused to do.

78. Upon not adequately addressing Plaintiff's complaints about the conduct to which she was subjected by Arenella, Plaintiff broke down crying in the car and remained silent for the rest of the ride to the office.

79. At this point, Plaintiff was reluctant to return to NYOR as it was clear that the sexual harassment to which she was being subjected by Arenella would not end.

80. When Plaintiff advised Maria that she was going to be late to the office on March

14, 2024 as she was still contemplating whether she could continue working for Defendants, Maria told her not to bother coming in, making it clear that Plaintiff was no longer welcome at NYOR.

81. Thus, the work environment at NYOR has scarred and broken Plaintiff, to the point that she had choice but to leave her employ on March 14, 2024.

82. Thereafter, Arenella further defamed Plaintiff by telling other employees that she came to his house naked for a massage, which was clearly false.

83. Here, Plaintiff clearly rejected the sexual advances by Arenella, which were unwelcome.

84. This was not voluntary relationship, but one of a supervisor (Arenella) sexually harassing a subordinate (Plaintiff), who did not want to be in such a relationship.

85. Finally, it is worth noting that Plaintiff was privy to a conversation with Maria (Defendants' office manager) and Jennifer (Defendants' office administrator), where Arenella's actions were discussed.

86. During this conversation, Maria mentioned another co-worker who was sexually harassed by Arenella because he took advantage of her for sexual favors.

87. When Maria and Jennifer asked Plaintiff about her relationship with Arenella, Plaintiff expressly stated that she had no interest in him, consistent with the position she had during her employment with Defendants.

88. Subsequently, Plaintiff texted Arenella to, in part, recount the environment to which she was subjected while working for Defendants.

89. Plaintiff texted Arenella, in relevant part, that Arenella "never wanted a cleaner you wanted to use that opportunity to fuck me but you'll never get the chance to."

90. Arenella had no response to Plaintiff's messages.

9

## COUNT ONE
### (Discrimination Based on Gender in Violation of the Title VII)

91. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

92. Defendants violated Title VII when they constructively terminated Plaintiff's employment because of her gender.

93. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

94. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TWO
### (Discrimination Based on Gender in Violation of the NYSHRL)

95. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

96. Defendants violated the NYSHRL when they constructively terminated Plaintiff's employment because of her gender.

97. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

98. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THREE
### (Hostile Work Environment in Violation of Title VII)

99. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully

set forth herein.

100. As set forth herein, Defendants fostered a working environment that was permeated with discriminatory intimidation, ridicule and insult against Plaintiff.

101. Plaintiff was subjected to such conduct, which was severe or pervasive, and altered the conditions of her work environment.

102. The hostile conduct was engaged in by Arenella, who had authority over Plaintiff, thereby making Defendants liable for the wrongful conduct.

103. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FOUR
### (Hostile Work Environment in Violation of NYSHRL)

104. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

105. As set forth herein, Defendants fostered a working environment that was permeated with discriminatory intimidation, ridicule and insult against Plaintiff.

106. Plaintiff was subjected to such conduct, which was severe or pervasive, and altered the conditions of her work environment.

107. The hostile conduct was engaged in by Arenella, who had authority over Plaintiff, thereby making Defendants liable for the wrongful conduct.

108. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FIVE
**(Retaliation in Violation of the Title VII)**

109. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

110. Plaintiff participated in protected activities under Title VII by, among other things, complaining of continued harassment in the workplace.

111. After lodging her complaints to Defendants, Plaintiff was assigned additional duties and then constructively terminated from her employment.

112. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

113. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SIX
**(Retaliation in Violation of the NYSHRL)**

114. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

115. Plaintiff participated in protected activities under the NYSHRL by, among other things, complaining of continued harassment in the workplace.

116. After lodging her complaints to Defendants, Plaintiff was assigned additional duties and then constructively terminated from her employment.

117. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

118. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to

suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SEVEN
### (Aiding and Abetting Discrimination in Violation of the NYSHRL)

119. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

120. As a result of the aforementioned actions, Arenella discriminated and retaliated against Plaintiff on account of her gender with respect to the terms, conditions and privileges of her employment in violation of the NYSHRL.

121. Arenella violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

122. Arenella acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

123. As a result of Arenella's unlawful acts, Plaintiff has suffered and continues to suffer damages, including wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief against Defendants as follows:

A. Awarding Plaintiff compensatory damages, lost wages, emotional distress damages, liquidated damages, interest, attorneys' fees and costs for her gender discrimination, hostile work environment and retaliation claims under Title VII and NYSHRL;

B. Awarding pre- and post-judgment interest as permitted under the law;

C. Awarding the costs of this action together with reasonable attorneys' fees; and

D. Awarding Plaintiff punitive damages; and

E.      Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.

Dated: January 31, 2025
      Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**

By: _/s/ Yale Pollack_
    Yale Pollack, Esq.
*Attorneys for Plaintiff*
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340
ypollack@yalepollacklaw.com